IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

M<span>AYBELLE</span> K<span>ACKLEY</span>,

        Plaintiff,

vs.                              Case No. 14-1283-JTM

C<span>AROLYN</span> W. C<span>OLVIN</span>, Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

Plaintiff Maybelle Kackley applied for Social Security supplemental security income benefits in December, 2010. Her claim was denied initially and on reconsideration. After a January 22, 2013, hearing, her application was denied by the Administrative Law Judge (ALJ). The Appeals Council declined to review this determination, rendering final the denial of benefits. In the present appeal, Kackley alleges that the ALJ's decision does not rest upon substantial evidence and failed to give full weight to the opinion of a treating physician, and that the ALJ erred in assessing her credibility.

Plaintiff-claimant Kackley was born on August 15, 1966. She has stated that she became disabled on July 1, 2002, citing ailments including back problems, depression,

anxiety, nerve damage, bursitis, and arthritis. (Tr. 180). She has previously worked as a pharmacy technician and office worker, and has worked as a sewer for an clothing manufacturer and an upholsterer.

Although Kackley sought supplemental security income based upon a disability allegedly commencing in 2002, pursuant to 20 C.F.R. § 416.335 (2014), she can recover such income only for a period after her application, which here occurred in 2010. In her application for benefits, Kackley wrote that she stopped working on July 1, 2002, and that did so "[b]ecause of my conditions." (Tr. 180).

The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 21-30).

The ALJ found that Kackley had the severe impairments, as defined by 20 C.F.R. § 416.920(c), of degenerative disc disease, osteopenia, pulmonary artery emboli peptic ulcer disease, varicose veins with venous insufficiency, and heart disease. However, he also determined that while Kackley had been diagnosed with thyroid problems, these did not constitute a severe impairment. In addition, while Kackley has a history of knee pain, this was not a severe impairment given evidence indicating that the condition was not persistent. The ALJ further found that Kackley's impairments, whether alone or in combination, do not meet the severity standards of 20 C.F.R. § Part 404, Subpart P, Appendix 1.

In determining Kackley's residual functional capacity (RFC), the ALJ found that the claimant can still do routine, sedentary, unskilled work. (Tr. 25). However, this assessment

was limited in that Kackley (a) cannot not walk or stand for more than two hours in an eight hour work day, in increments no greater than ten minutes, (b) must have a stretch break every half hour, (c) cannot climb ladders, ropes, scaffolds or crawl, although she may occasionally crouch, balance, stoop and kneel, (d) cannot continuously perform handling and fingering movements, although she may do so frequently, (e) must avoid moderate exposure to extreme temperatures, vibrations, pulmonary irritants, and hazards, and (f) have only have occasional interpersonal contact in the workplace. (*Id*.)

The ALJ further found that Kackley had no past relevant work to return to. However, given this RFC and based upon the testimony of a vocational expert, Kackley could work as an addresser, microfilm document preparer, or press clipping worker. (*Id*. at 30).

This court reviews the ALJ's decision under 42 U.S.C. § 405(g) to "determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (citation omitted). "Substantial evidence requires more than a scintilla but less than a preponderance." *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (citation omitted). The court's role is not to "reweigh the evidence or substitute its judgment for the Commissioner's." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008). The possibility that two inconsistent conclusions may be drawn from the evidence does not preclude a finding that the

3

Commissioner's decision was based on substantial evidence. *Zoltanski*, 372 F.3d at 1200.

An individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley v. Astrue*, No. 09-1163-JTM, 2010 WL 3001753, at *2 (D. Kan. July 28, 2010) (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has prescribed a five-step sequential analysis to determine whether disability existed between the time of claimed onset and the date the claimant was last insured under the Act. *Wilson*, 602 F.3d at 1139; 20 C.F.R. § 404.1520(a)(4). If the trier of fact finds at any point during the five steps that the claimant is disabled or not disabled, the analysis stops. *Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). The first three steps require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a medically severe impairment or combination of impairments; and (3) whether the severity of those impairments meets or equals a listed impairment. *Wilson*, 602 F.3d at 1139 (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). If the impairments do not meet or equal a designated listing in step three, the

Commissioner then assesses the claimant's RFC based on all medical and other evidence in the record. 20 C.F.R. § 404.1520(e). RFC is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753, at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545. "RFC is not the least an individual can do despite his or her limitations or restrictions, but the most." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996) (emphasis in original). The Commissioner then proceeds to step four, where the RFC assessment is used to determine whether the claimant can perform past relevant work. *Lax*, 489 F.3d at 1084; 20 C.F.R. § 404.1520(e). The claimant bears the burden in steps one through four of proving disability that prevents performance of her past relevant work. 42 U.S.C. § 423(d)(5)(A); *Lax*, 489 F.3d at 1084.

If a claimant meets the burdens of steps one through four, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given her age, education, and work experience." *Lax*, 489 F.3d at 1084 (brackets omitted). The ALJ determines RFC by evaluating a claimant's impairments that are "demonstrable by medically acceptable clinical and laboratory diagnostic techniques," then weighing evidence to determine the nature and severity of those impairments. 20 C.F.R. §§ 404.1527(a), 416.927(a). Such evidence may include medical opinions, other opinions, and a claimant's subjective complaints. *Id.*; *see also Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009).

As noted earlier, the plaintiff here alleges that the ALJ erred in finding that her subjective complaints were less than fully credible. She also argues that the ALJ erred in

failing to give full weight to the opinions of Dr. Terri Nickel, a treating physician.

Dr. Nickel completed two Medical Source Statements addressing Kackley's mental and physical condition in May, 2012. These Statements are check-box forms, with the physical assessment stating that Kackley can lift five pounds frequently, and ten pounds occasionally. She can walk continuously for fifteen minutes, and walk for a total of an hour during an eight hour workday. She can sit for fifteen minutes at a time, and for two hours during an eight hour day. She has no limitations on pulling, she should never climb, balance, or crawl, and only occasionally stoop kneel crouch, reach, handle, finger, or feel. She must avoid extreme heat and cold. (Tr. 636-37). In the mental assessment, Dr. Nickel checked the boxes indicating Kackley was markedly limited in the ability to concentrate for extended periods. She was only moderately limited in remembering work procedures, understanding, remembering, and carrying out detailed instructions, maintain a schedule, work with others, make simple work decisions, complete a normal workday, accept instructions, maintain socially appropriate behavior, use public transit, and set realistic goals. She was not significantly limited in her ability to understand, remember and carry out simple instructions, sustain an ordinary routine, ask for assistance, interact with the public, and respond appropriately to changes in the workplace. (Tr. 639-40). Immediately before the ALJ hearing on January 16, 2013, Dr. Nickel completed a short, single-paragraph note stating that Kackley "is presently unable to work due to her issues," which Dr. Nickel stated include "severe depression and anxiety, chronic back pain, and panic attacks." (Tr. 680).

A treating physician's statement is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)). If the treating physician's statement is not well-supported or is otherwise inconsistent with substantial evidence on record, it is not entitled to controlling weight and is weighed as any other medical opinion. *Id.*

Medical opinions are weighed by evaluating all relevant factors including: (1) an opinion source who examined the claimant is generally given more weight than one who has not; (2) an opinion source who treated the claimant is generally given more weight than one who has not; (3) the length, nature, and extent of any examining or treatment relationship; (4) whether the opinion source presents supporting evidence, such as medical signs and laboratory results; (5) how well the source explains the opinion; (6) whether the opinion is consistent with the record; (6) whether the source has specialty related to the claimant's impairments; and (7) all other relevant factors of which the ALJ is aware that may bear on what weight should be given to a medical opinion. 20 C.F.R. §§ 404.1527, 416.927; *see Knight ex rel P.K. Colvin*, 756 F.3d 1171, 1176-77 (10th Cir. 2014). "[T]he ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Knight ex rel P.K.*, 756 F.3d at 1177 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

The court finds no error in the ALJ's treatment of Dr. Nickel's Medical Source Statements. The ALJ did not reject these statements, but incorporated certain of these

suggested limitations into Kackley's RFC. Indeed, the ALJ explicitly based his RFC in part on Dr. Nickel's assessments, and plaintiff's own subjective hearing testimony, giving them the benefit of the doubt.

However, the ALJ also accurately noted that Dr. Nickel's statements as to Kackley's physical condition was offered "without explanation, using a check box form," and was less than fully credible

> because it contains no medical findings or narrative to support such profound limitations. Similarly, Dr. Nickel's opinion regarding the claimant's mental health is given some weight but is not entirely credible for the aforementioned reasons. Further, Dr. Nickel's opinion regarding the claimant's mental residual functional capacity is inconsistent with the objective medical evidence of record and the residual functional capacity contained herein.

(Tr. 28). In addition, Dr. Nickel's opinion was inconsistent with the state agency assessments and consultative examiner's opinions. (Tr. 28-29). The ALJ explicitly based his conclusions upon Kackley's "complete medical history." (Tr. 21). The court finds no error in the ALJ's analysis, which reflects an appropriate attempt to resolve conflicts in the medical evidence. The ALJ adopted Dr. Nickel's opinions as to limitations on standing and sitting, as well as her lifting capacity. But he legitimately rejected the conclusory and unsupported determinations addressing the ultimate issue in the matter — asserting that the plaintiff was disabled to the extent that she could not perform even sedentary work.

The plaintiff next argues that the ALJ erred in concluding that her subjective statements were less than fully credible. In rendering a credibility determination, the ALJ "must consider the entire case record, including the objective medical evidence" to

8

determine whether plaintiff's subjective claims of debilitation are credible. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). A claimant's subjective complaints are evaluated for credibility under a three-step analysis that asks:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)) The ALJ need not make a "formalistic factor-by-factor recitation of the evidence" if he specifies evidence relied on in the credibility analysis. *Id.* (citing *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). "[A] credibility determination 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record' and be 'sufficiently specific' to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight." *Hayden v. Barnhart*, 374 F.3d 986, 992 (10th Cir. 2004) (quoting SSR 96-7p, 1996 WL 374186, at *4).

The court finds no error in the detailed opinion of the ALJ, which considers the plaintiff's credibility in the context of the entire record, and which applies the correct standards for the assessment of subjective complaints by a claimant. In that opinion, the ALJ noted that Kackley's complaints of back and neck pain, and her statement that she needs to have surgery but that her insurance company refuses to pay for it.

However, diagnostic tests indicated only mild spinal changes and normal cervical and thoracic spines. Dr. Michael Chang examined Kackley on November 9, 2011, and

stated, "I do not see a surgical indication." (Tr. 589). Dr. Chang recommended pain management and physical medicine rather than surgery. The ALJ also noted Dr. Chang's report that his examination of the plaintiff was "difficult" because she was "unable to cooperate" and in fact refused to attempt certain movements. (Tr. 590-91). Kackley appeared to have tenderness in the spinal area, but good range of motion in the cervical area and "[s]ome deceased lumbar range of motion." (Tr. 590). Dr. Chang noted that as to Kackley's musculoskeletal condition: "Pain free, full or nearly full active range of motion bilateral shoulders and elbows. No evidence of should impingement. Pain-free range of motion bilateral lower extremities." (*Id.*)

Similarly, the ALJ noted that the plaintiff complained that she had stopped working in part because of heart problems. (Tr. 180). The plaintiff hospitalized for two days in 2009, with an initial diagnosis of pulmonary artery emboli, and she later complained of chest pains. (Tr. 404). However, a follow-up coronary CTA conducted on November 27, 2009, at Galichia Heart Hospital reported that the plaintiff "was somewhat uncooperative, according to the technician, and did not want to have the study," which ultimately "looked unremarkable," and "no coronary obstructive disease could be appreciated." (Tr. 316). On December 16, 2009, Kackley told Dr. Stephanie Oberhelman (D.O.) that "she was recently hospitalized to see if it was her heart giving her trouble, 'but my heart was ok.'" (Tr. 346). Subsequent diagnostic tests in 2010, 2011, and 2012, indicated a normal heart rate and no indicia of pulmonary embolism (Tr. 312, 652-79).

The plaintiff has also reported problems with varicose veins and venous

10

insufficiency, with peptic ulcers, and osteopenia. As the ALJ noted, the objective medical evidence indicates that these conditions were not as extensive as the plaintiff claimed. The plaintiff was successfully treated for her veins in October and November 2010. On December 8, 2010, Kackley told Dr. Oberhelman that following this treatment she experienced a "significant improvement of symptoms." (Tr. 386). No laboratory studies document the ulcer, and, while an upper gastrointestinal endoscopy on December 28, 2009, found that "[a] small hiatus hernia was present," the test indicated normal results overall. (Tr. 351). A bone density scan on June 30, 2011 found only a "slight" increase in risk due to osteopenia. (Tr. 581).

The ALJ also found a conflict between the plaintiff's general testimony and the report by consultative examiner Dr. James Henderson. Dr. Henderson found that Kackley's gait and station were normal and that she had "no difficulty with orthopedic maneuvers." (Tr. 448).

With respect to Kackley's mental impairments, the ALJ noted that she had refused to take prescribed antidepressants. Even with these conditions, Kackley would still be able to understand and carry out simple tasks and get along with co-workers and supervisors. (Tr. 453).

Finally, the ALJ found that Kackley's statements were not fully credible in light of her activities of general daily living.

> The claimant's activities of daily living are inconsistent with total disability. At the hearing, the claimant testified that she able to take care of her personal hygiene and drive a car. The claimant stated that she stopped working eight years ago. However, she did not really allege that she stopped working

>because of physical or mental limitations. Instead, the claimant chose to stop working so that she could spend the summer with her children. The claimant stated that she takes several prescribed medications and overall, they are effective in relieving her symptoms. The medical evidence of record reflects that the claimant has a history of noncompliance with recommended medical treatment, suggesting her symptoms are not that limiting. On May 11, 2012, the claimant complained of worsening back pain. She was counseled to take her medication as prescribed. On June 7, 2012, the claimant was advised that pain medication would not be prescribed due to her continued marijuana use. Further, the evidence reflects that the claimant stopped taking all medications, was resistant to seeking pain management treatment and declined to sign a pain management agreement. The claimant is a chronic smoker and smokes approximately one and a half packs of cigarettes daily. These acts are inconsistent with an assertion that this claimant is in disabling physical pain. At the hearing, the claimant testified that she is a surgical candidate. She stated that she has not received surgery because her insurance company is unwilling to pay for the surgery. However, the medical evidence indicates that the claimant is not a surgical candidate.

(Tr. 28 (record citations omitted)).

Again, as noted earlier, the ALJ did not completely reject Kackley's subjective assessment of her condition. In fact, he concluded that he found her to be "generally credible" and the RFC he adopted "gives great weight to [her] subjective complaints." (*Id*.) However, he ultimately concluded that Kackley's "activities and treatment record fail to support limitation beyond sedentary exertion." (*Id*.) This determination is supported by substantial evidence.

IT IS ACCORDINGLY ORDERED this 10th day of August, 2015, that the present appeal is hereby denied, and the decision of the Commissioner is AFFIRMED.

                                                  s/ J. Thomas Marten
                                                  J. THOMAS MARTEN, JUDGE